# Appointment of Uncompensated Special Attorneys Under 28 U.S.C. § 515

The proposal of two components of the Department of Justice to hire a modest number of uncompensated litigation attorneys would not violate the Antideficiency Act (1) because the services would be provided by a person acting in an official capacity under a regular appointment and (2) because 28 U.S.C. § 515 authorizes the Attorney General to appoint special attorneys to perform these services and does not specify a minimum salary.

The Department and the special attorneys should enter into agreements acknowledging that the special attorneys will not receive compensation for their services.

April 25, 2012

MEMORANDUM OPINION FOR THE DIRECTOR
OFFICE OF ATTORNEY RECRUITMENT AND MANAGEMENT

Section 515(a) of title 28 of the United States Code authorizes the Attorney General to appoint special attorneys to "conduct any kind of legal proceeding, civil or criminal," that "United States attorneys are authorized by law to conduct." Invoking this authority, two components of the Department of Justice seek to hire a modest number of uncompensated litigation attorneys to perform the same functions that compensated attorneys within those components perform. The Department's Office of Attorney Recruitment and Management ("OARM") has asked whether implementing this proposal would violate the Antideficiency Act, which forbids federal agencies to accept voluntary services, *see* 31 U.S.C. § 1341 (2006). We conclude that it would not.

Attorneys General, this Office, and the Government Accountability Office ("GAO") have long applied a two-part test that must be satisfied for the federal government lawfully to accept uncompensated services. First, the services must be provided by a person acting in an official capacity under a regular appointment. Second, Congress must have authorized the appointment of unpaid persons to the position at issue. If both elements of the test are satisfied, the appointees are providing lawful "gratuitous" services, not unlawful "voluntary" services, and thus the government's acceptance of those services would not violate the Antideficiency Act. The Department's proposed appointments under section 515(a) would fulfill both parts of the standard and therefore would not

violate the Act. We strongly advise, however, that the Department and section 515(a) appointees enter into agreements acknowledging that the latter will not receive compensation for their services.

Appointments that satisfy the standard for lawful gratuitous services also comply with the anti-augmentation rule of appropriations law (assuming that principle applies to the receipt of services as well as funds). Although federal agencies may not *unilaterally* augment their appropriations from outside sources, they may do so with congressional permission. Section 515(a) provides the Department with the requisite authority.

## I.

The Justice Department's use of uncompensated legal services is not new. For many years lawyers have served without compensation as Special Assistant United States Attorneys ("SAUSAs") within U.S. Attorneys' offices. *See, e.g.*, Memorandum for Edward R. Slaughter, Jr., Special Assistant to the Attorney General for Litigation, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Proposal by United States Attorney's Office Concerning the Use of Private Attorneys for Service Without Compensation* at 1 (May 29, 1980) ("*Proposal by United States Attorney's Office*") (approving SAUSA appointment). These appointments are authorized by a statute providing that "[t]he Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires." 28 U.S.C. § 543(a) (2006 & Supp. IV 2010). Recently, U.S. Attorneys have increased their offices' use of unpaid SAUSA appointments, often in the form of fellowships or temporary positions for junior attorneys seeking experience and training. *See* Memorandum for Virginia A. Seitz, Assistant Attorney General, Office of Legal Counsel, from Louis DeFalaise, Director, OARM, *Re: Appointment of Uncompensated Special Attorneys Pursuant to 28 U.S.C. § 515* at 1–2 (Sept. 26, 2011) ("OARM Memo").

OARM's question arises because two litigating divisions—the Criminal Division and the Civil Rights Division—are now contemplating similar programs under a different statutory authority. *See id.* at 2. Specifically, those divisions wish to hire a limited number of special attorneys to serve without compensation under a provision that authorizes the Attorney General to appoint these attorneys to "conduct any kind of legal proceeding, civil or criminal, . . . which United States attorneys are authorized by

law to conduct." 28 U.S.C. § 515(a) (2006).[1] Section 515(b) provides that "[e]ach attorney specially retained under authority of the Department of Justice shall be commissioned as special assistant to the Attorney General or special attorney, and shall take the oath required by law." The statute further states that "[t]he Attorney General shall fix the annual salary of a special assistant or special attorney." *Id*. § 515(b).

OARM informs us that the Criminal Division would like to hire roughly 30 uncompensated special attorneys, or approximately five percent of its workforce, through the proposed program. OARM Memo at 2. The Civil Rights Division proposes to hire up to twelve uncompensated special attorneys. OARM has asked whether the proposal would violate the Antideficiency Act ("ADA").

## II.

### A.

Generally speaking, federal agencies may not accept voluntary services. *See Employment Status of "Volunteers" Connected with Federal Advisory Committees*, 6 Op. O.L.C. 160, 161 (1982) ("*Federal Advisory Committees*"). This prohibition is embodied in the ADA, which provides that "[a]n officer or employee of the United States Government . . . may not accept voluntary services for [the] government or employ personal services exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property," 31 U.S.C. § 1342 (2006).[2] But the ADA does not forbid federal agencies to accept all uncompensated services. Instead, the Department of Justice has long distinguished between "voluntary services," which the federal government cannot lawfully accept, and "gratuitous services," for which the govern-

---

[1] The Attorney General has delegated his appointment authority to the Deputy Attorney General and authorized the Deputy Attorney General to further re-delegate it. 28 C.F.R. § 0.15 (2011); *see also United States v. Prueitt*, 540 F.2d 995, 1000 (9th Cir. 1976) ("Section 515(a) imposes no limitation on the Attorney General's authority to delegate his power of appointment to other officers within the Department of Justice.").

[2] Congress reworded and reorganized the ADA in 1982 to modernize its language without changing its meaning. *See* Pub. L. 97-258, 96 Stat 877 (1982) ("To revise, codify, and enact without substantive change certain general and permanent laws, related to money and finance, as title 31, United States Code, 'Money and Finance.'"). The relevant provision was previously located at 31 U.S.C. § 665(b).

ment may lawfully contract. *See Employment of Retired Army Officer as Superintendent of Indian School*, 30 Op. Att'y Gen. 51, 52 (1913) ("*Employment of Retired Army Officer*"). As Attorney General Wickersham explained:

> [I]t seems plain that the words 'voluntary service' were not intended to be synonymous with 'gratuitous service' and were not intended to cover services rendered in an official capacity under regular appointment to an office otherwise permitted by law to be nonsalaried. In their ordinary and normal meaning these words refer to service intruded by a private person as a 'volunteer' and not rendered pursuant to any prior contract or obligation . . . . It would be stretching the language a good deal to extend it so far as to prohibit *official* services without compensation in those instances in which Congress has not required even a minimum salary for the office.

*Id*. at 52. This Office has repeatedly adhered to this distinction. *See, e.g.*, Memorandum for Francis A. Keating II, Acting Associate Attorney General, from Michael Carvin, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Independent Counsel's Authority to Accept Voluntary Services—Appointment of Laurence W. Tribe* at 2 (May 19, 1988) ("*Independent Counsel's Authority*") (describing Attorney General Wickersham's opinion as "the authoritative construction of the prohibition on voluntary services in the [ADA]").

As we have explained, gratuitous services are lawful (and voluntary services are not) because "the [ADA] was intended to eliminate subsequent claims against the United States for compensation of the 'volunteer,' rather than to deprive the government of the benefit of truly gratuitous services." *Federal Advisory Committees*, 6 Op. O.L.C. at 162; *see also Employment of Retired Army Officer*, 30 Op. Att'y Gen. at 55 ("[T]he evil at which Congress was aiming was not appointment or employment for authorized services without compensation, but the acceptance of unauthorized services not intended or agreed to be gratuitous and therefore likely to afford a basis for a future claim upon Congress."). Forbidding federal agencies to accept voluntary services prevents potential future liability based on claims for compensation for such services. In contrast, a contract for "truly gratuitous" services would not create concerns about future liability. We have also noted the separate but related point that "employees may not waive a salary for which Congress has set

a minimum," *Federal Advisory Committees*, 6 Op. O.L.C. at 161 (citing *Glavey v. United States*, 182 U.S. 595 (1901)). Thus, the federal government may not accept uncompensated services in positions for which Congress has mandated a threshold salary. But when Congress has not specified a minimum salary for particular positions, the acceptance of such services cannot be said to circumvent congressional intent.

With those points in mind, we have consistently found that service is gratuitous, and hence lawful, if it satisfies two requirements. First, a person must render the service in an official capacity under a regular appointment to a position. *See Authority to Decline Compensation for Service on the National Council of Arts*, 13 Op. O.L.C. 113, 114 (1989) ("*National Council of Arts*"). Second, the position must be permitted by law to be nonsalaried. Permission is inferred if Congress sets "no specific statutory rate of compensation" for a position, "but only a maximum." *Id.* As a result, "if the level of compensation for an office is entirely discretionary, or if it has only a fixed maximum and no minimum, salary for that office may be set at zero." *Id.*

Many opinions of this Office illustrate this approach. We advised the White House, for instance, that it could accept gratuitous secretarial and clerical services obtained under the Executive Office Appropriations Act of 1977, Pub. L. No. 94-363, 90 Stat. 966 (1976), because "Congress has mandated no minimum salary for these positions." *Acceptance of Voluntary Service in the White House*, 2 Op. O.L.C. 322, 323 (1977) ("*Voluntary Service*"). We also concluded that the Department of Commerce could appoint uncompensated consultants under 5 U.S.C. § 3109, *Federal Advisory Committees*, 6 Op. O.L.C. at 162, and that a member of the National Council of the Arts appointed by the President, with the advice and consent of the Senate, could "serv[e] without compensation, or more precisely, . . . serve with compensation fixed at zero," *National Council of the Arts*, 13 Op. O.L.C. at 114. And we determined that the Independent Counsel for Iran-Contra had statutory authority to appoint a law professor to work on a Supreme Court brief as special counsel without pay. *Independent Counsel's Authority* at 1, 5.

The GAO has adopted this approach as well. Recognizing Attorney General Wickersham's opinion as "the leading case construing 31 U.S.C. § 1342," the GAO "continue[s] to follow to this day . . . the distinction between 'voluntary services' and 'gratuitous services.'" 2 *Principles of*

*Federal Appropriations Law* 6-96 (3d ed. 2006) ("GAO Redbook"). For the government to accept "gratuitous" services, the GAO requires "the appointment of an individual to an official government position," *id*. at 6-99, and it instructs that "if the level of compensation is discretionary, or if the relevant statute prescribes only a maximum (but not a minimum), the compensation can be set at zero, and an appointment without compensation or a waiver, entire or partial, is permissible," *id*. at 6-97.

Applying this well-established two-part inquiry, we conclude that the Department may appoint uncompensated special attorneys under 28 U.S.C. § 515 without violating the ADA. The first element of the gratuitous-service test—that the appointee render service in an official capacity under regular appointment to an office—is satisfied because section 515 is a "sourc[e] of explicit statutory authority to hire attorneys." Memorandum for Edward R. Slaughter, Jr., Special Assistant to the Attorney General for Litigation, from Thomas O. Sargentich, Office of Legal Counsel, *Re: Hiring Law Professors or Private Attorneys to Litigate on behalf of the United States as Department of Justice Attorneys* at 2 (July 10, 1980) ("*Private Attorneys*"); *see also United States v. Plesinski*, 912 F.2d 1033, 1037 n.5 (9th Cir. 1990) ("[S]ection 515 authorizes the appointment of attorneys to assist the Attorney General.").

The second element of the test for gratuitous service is also satisfied, because the statute expressly authorizes the Attorney General to "fix the annual salary of a special assistant or special attorney." 28 U.S.C. § 515(b). The statutory grant of such discretion establishes that the position is permitted by law to be unsalaried. *See, e.g.*, *Independent Counsel's Authority* at 5 ("[T]he independent counsel's authority in section 594(c) to fix the compensation of his employees includes the authority to fix their compensation at zero[.]"). Apart from this general rule, specific evidence in the legislative history of section 515 shows that Congress intended to dispose of minimum salaries for special attorneys. Section 202 of the Department of Justice Appropriation Act of 1954, Pub. L. No. 83-195, 67 Stat. 372, 375 (1953), allocated funds for the salaries of Department officials including "special attorneys and special assistants to the Attorney General . . . without regard to the Classification Act," with the proviso that "in no event shall the annual salary of . . . any special attorney or special assistant be less than $6,000, if the official has been admitted to the practice of law for 3 years, or more than $12,000." But shortly after that, the Department informed Congress that it could "pro-

cure lawyers to fill some of these positions, who . . . are willing to serve for less than the $6,000 minimum," S. Rep. No. 83-1541, at 14, and the next appropriation act provided that "[t]he minimum annual salary of . . . any special attorney or special assistant, as set forth in section 202 of the [prior act] shall no longer apply to any such official after June 30, 1954," Departments of State, Justice, and Commerce and the U.S. Information Agency Appropriations Act of 1955, Pub. L. No. 83-471, § 202, 68 Stat. 413, 421–22 (1954). This provision eliminating the statutory minimum salary for special attorneys was codified as part of section 515 in 1966. *See* 28 U.S.C. § 515 note. Consistent with this Office's general rule and the specific legislative history of section 515, we have repeatedly advised that this section "permits employment without compensation." *E.g.*, *Private Attorneys* at 2.[3]

These conclusions find strong support in our longstanding opinions, noted above, concluding that the Department of Justice may employ the uncompensated services of SAUSAs appointed under 28 U.S.C. § 543 without violating the ADA. The salary of Special Assistant U.S. Attorneys is "fixed administratively as authorized by 28 U.S.C. § 548." Memorandum for William B. Gray, Director, Executive Office for U.S. Attorneys, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Appointment of the Dean of the University of Arizona Law School to be a Special Assistant United States Attorne[y]* at 2–3 (June 18, 1976) ("*Arizona Dean*"). Thus, "no minimum salary is established by law for such positions." Memorandum for Frances M. Green, Deputy Associate Attorney General, from Larry A. Hammond, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Questions Raised by Proposed Appointment of Lawyer in Private Practice as Gov-*

---

[3] We previously advised that section 515 "does not except the appointments of § 515 special attorneys from the civil service classification act" because the recodification of that provision in 1966 "does not include [the] exception from the Classification Act" found in the prior appropriation law. Memorandum for Warren Oser, Chief, Staffing and Employee Relations Unit, Administrative Division, from Mary C. Lawton, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Interpretation of the $12,000 Salary Limitation Imposed on Special Attorneys by 28 U.S.C. § 515(b)* at 3, 4 (Mar. 12, 1974). We do not believe that advice, which also suggested that salaries set under 28 U.S.C. § 548 were subject to the General Schedule ("GS"), survives *Private Attorneys*, our other opinions discussing the appointment of SAUSAs, or our adherence to the rule that permission for a position to be unsalaried is inferred when the law states only a maximum salary.

*ernment Attorney for Purposes of Trying Selected Civil Cases* at 4 (Mar. 23, 1979) ("Hammond Memo"). Because the statute authorizes a SAUSA to "be appointed without compensation should he so desire," the ADA does not proscribe an uncompensated appointment. *Id*.; *accord Proposal by United States Attorney's Office* at 1 (advising that it was "legally permissible" under the ADA for the U.S. Attorney for the Northern District of California to implement a program under which associates in private law firms would be employed without compensation by the U.S. Attorney's Office as SAUSAs under 28 U.S.C. § 543); *Arizona Dean* at 3 ("[O]ur conclusion that special assistants to United States Attorneys may serve without compensation is not inconsistent with the prohibition in 31 U.S.C. § 665(b) against the acceptance of 'voluntary service.'").

Many of these opinions suggest that their conclusions would apply equally to special attorneys appointed under section 515. For example, in *Private Attorneys*, we explained that "if the statute authorizing the Department to hire an employee permits employment without compensation—as we believe 28 U.S.C. §§ 515 and 543 do—then the otherwise applicable prohibition on the government's acceptance of 'voluntary services' in 31 U.S.C. § 665(b) would not apply." *Private Attorneys* at 2. Similarly, when our Hammond Memo addressed the legality of temporarily appointing a lawyer in private practice (whom we dubbed "L") as a government attorney to try selected civil cases, "[w]e assume[d] that L would be employed on a temporary basis either as a Special Assistant United States Attorney pursuant to 28 U.S.C. § 543, or as a special attorney or special assistant to the Attorney General pursuant to 28 U.S.C. § 515." Hammond Memo at 3. Either way, we concluded, L's uncompensated service would not offend the ADA. "Like § 543," we explained, "§ 515(b) does not establish a minimum salary; service without compensation would thus . . . be permissible." *Id*. at 4. And in advice that did not directly address the ADA question, we treated sections 515 and 543 as materially similar authorities for the hiring of uncompensated attorneys. *See Assignment of Army Lawyers to the Department of Justice*, 10 Op. O.L.C. 115, 117 n.3 (1986); *Acceptance of Funds by the Department of Justice from Other Agencies to Employ Attorneys in Land Acquisition Cases*, 2 Op. O.L.C. 302, 306–07 (1978).

We therefore conclude that the uncompensated service of special attorneys appointed under section 515, like that of SAUSAs under section 543, is "gratuitous," not "voluntary," and does not violate the ADA. The

attorneys would be (1) regularly appointed to positions (2) for which Congress has specified no minimum compensation. We suggest, however, that the Department enter into prior agreements with the appointed attorneys memorializing that they would serve without salary. *See Private Attorneys* at 2 (stating that there should be "a prior agreement between the Government and the attorney that the latter will serve at no compensation"); GAO Redbook at 6-100 ("Proper documentation is important for evidentiary purposes should a claim subsequently be attempted. . . . [T]he individuals should acknowledge in writing and in advance that they will receive no compensation and that they should explicitly waive any and all claims against the government on account of their service.") (citations omitted).

## B.

Although the above analysis answers the question presented, language in some of our opinions suggests that appointees providing uncompensated service may not perform "official work of [a] Department that would otherwise have been performed by paid government employees as part of their regular duties." Memorandum for Judith A. Winston, General Counsel, Department of Education, from Richard L. Shiffrin, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Uncompensated Voluntary Services* at 2 (Nov. 28, 1994). OARM asks whether that language is relevant to analysis of the proposed special attorney appointments here. OARM Memo at 3–5. Such a limitation does not appear in Attorney General Wickersham's "authoritative construction of the prohibition on voluntary services in the [ADA]," *Independent Counsel's Authority* at 2, or in our most recent published opinion on the issue, *National Council of Arts*, 13 Op. O.L.C. 113. Nor does the GAO Redbook or any Comptroller General decision of which we are aware discuss such a consideration.

We now clarify that the type of work to be performed by an uncompensated official is not a relevant factor in assessing whether appointments under section 515 violate the ADA. The type-of-work limitation may be germane under some statutes authorizing federal appointments, such as the authority to hire consultants or experts under 5 U.S.C. § 3109. *See Employment of Temporary or Intermittent Attorneys and Investigators*, 3 Op. O.L.C. 78, 78–79 (1979) ("*Temporary or Intermit-*

*tent Attorneys and Investigators*") (defining the terms "consultant" and "expert" and advising that they may not be hired without compensation simply "to perform the same functions as are performed by regular employees"). But any constraint on the type of work an appointee may perform is imposed by the authorizing statute, not the ADA, and no such constraint is present here. Section 515 grants broad authority to the Attorney General to appoint and direct the litigation activities of special attorneys, *see Infelice v. United States*, 528 F.2d 204, 206–07 (7th Cir. 1975); *United States v. Wrigley*, 520 F.2d 362, 367–69 (8th Cir. 1975); Congress did not restrict the type of work that such appointees may perform (so long as it is of the type that U.S. Attorneys are authorized to perform). As explained above, the appointment of attorneys to perform uncompensated services complies with the ADA so long as the two elements of the test for gratuitous service are satisfied.

The language suggesting a limit on the type of federal service that an uncompensated employee may provide has appeared only a few times in our opinions. We first cautioned in *Federal Advisory Committees* "against the use of volunteers on a broad scale or to accomplish tasks ordinarily performed by paid government employees." 6 Op. O.L.C. at 163. That passing statement, however, immediately followed our observation that "volunteer consultants" may provide gratuitous services because Congress had fixed no minimum salary for such appointments. *Id*. And we had previously observed that consultants appointed under 5 U.S.C. § 3109 "may not be employed to perform 'governmental functions.'" *Id*. at 162.

After *Federal Advisory Committees*, we considered four separate inquiries from federal agencies proposing to use the voluntary services of a private foundation, association, corporation, or person. *See Uncompensated Voluntary Services* at 9–11 (voluntary services from retirees and private companies or persons); Memorandum for the Files from Randy Beck, Attorney-Adviser, Office of Legal Counsel, *Re: Points of Light Initiative Foundation Meeting* at 5 (Feb. 9, 1990) (voluntary services from a private, nonprofit foundation); Memorandum for Joseph R. Davis, Assistant Director, Legal Counsel Division, Federal Bureau of Investigation, from Douglas W. Kmiec, Assistant Attorney General, Office of Legal Counsel, *Re: FBI Foundation* at 1, 7 (Feb. 10, 1989) (same); Memorandum for Richard C. Stiener, Chief, INTERPOL-National Central Bureau, from Ralph W. Tarr, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: USNCB Sponsorship of INTERPOL Gen-*

*eral Assembly Meeting* at 2 n.1, 7–8 (Aug. 16, 1983) ("*INTERPOL*") (volunteers from a private, nonprofit association). At various points these opinions suggested that the type of service a volunteer would provide is a relevant factor in determining whether the acceptance of that service would violate the ADA. We stated, for instance, that "[g]ratuitous services are those for which the individual knows he will receive no recompense *and* which do not involve tasks that would normally be provided by the agency." *FBI Foundation* at 6–7; *see also Uncompensated Voluntary Services* at 9.

In all of these opinions, however, either no regular appointment to office was to be made, or the statute authorizing the acceptance of services imposed an independent limit on the scope of services that could be accepted. In *INTERPOL*, for example, the United States National Central Bureau ("USNCB") of INTERPOL proposed to accept free services from a private, nonprofit association without any regular appointment of its members. *Id*. at 7–8. We advised that USNCB may not "necessarily" be able "to use [uncompensated] services if the [private association] personnel would be used to perform tasks that otherwise would be performed by USNCB staff," because USNCB personnel—like most federal civilian personnel—"are covered by the [General Schedule], for which Congress has set fixed minimums." *Id*. at 8. The root problems this somewhat opaque passage identifies appear to be that the volunteers would not be appointed to any regular position, and that the positions through which the services ordinarily would be performed (even if there were to be appointments) required minimum compensation.[4] Similarly, *Uncompensated Voluntary Services* rested in large measure on our determination that the Department of Education's statutory authority to accept services "'aiding or facilitating'" the Department's work could not "be construed to extend to services that would entail the direct *performance* or *execution* of the official work of the Department that would otherwise be done by paid government employ-

---

[4] In fact, reading this passage to suggest that an agency's acceptance of gratuitous services amounts to an impermissible salary waiver if the services would mirror those otherwise performed by an employee on the GS scale would place the *INTERPOL* advice in conflict with our earlier published opinion that the White House possesses statutory authority to accept gratuitous secretarial and clerical services, even though those services are normally provided by individuals with statutorily mandated minimum rates of pay. *Voluntary Service*, 2 Op. O.L.C. at 323.

ees." *Uncompensated Voluntary Services* at 6, 8 (quoting 20 U.S.C. § 3481). In other words, the Department of Education's gift-acceptance statute did not authorize the Department either to accept the free services as a gift or to appoint the volunteers to an uncompensated office. In both opinions, we observed that the agencies could hire consultants under 5 U.S.C. § 3109, *INTERPOL* at 8; *Uncompensated Voluntary Services* at 10—with the caveat that, as noted above, "consultants cannot be employed to perform 'governmental functions,' and their services must be limited to tasks of an advisory nature," *INTERPOL* at 8.

For the reasons described earlier, we do not believe that an agency violates the ADA when it uses the services of persons obtained through a regular appointment to a position for which Congress set no minimum salary, even if such persons perform the type of work that other agency employees perform. Any suggestion to the contrary in our prior opinions was incorrect. Because the language suggesting that uncompensated appointees cannot perform the type of service paid employees provide was not needed to support the conclusions of any prior opinions, our clarification here does not cast doubt on our prior advice. Each opinion discussed above reached an outcome consistent with the approach we now reaffirm.

In sum, we adhere to the two-part test for lawful gratuitous service as articulated by Attorney General Wickersham and long applied by this Office and the GAO to determine whether uncompensated appointments to federal positions violate the ADA. Although the type of service to be performed does not alter that test, it may be a relevant consideration under the statute authorizing the appointment if that statute imposes a restriction on the scope of services that may be performed by the appointee.

## III.

Finally, the ADA is not the sole constraint on government agencies' acceptance of gratuities from outside sources. The anti-augmentation principle of appropriations law provides that "an agency may not augment its appropriations" from outside sources "without specific statutory authority." *Authority for the Removal of Fugitive Felons Apprehended under 18 U.S.C. § 1073*, 7 Op. O.L.C. 75, 93 (1983). The objective of this rule, which is derived both from Congress's constitutional authority over

spending and from several statutory sources, is "to prevent a government agency from undercutting the congressional power of the purse by circuitously exceeding the amount Congress has appropriated for [an] activity." GAO Redbook at 6-162–63.

Our opinions and those of the GAO have generally applied the anti-augmentation rule only to receipts of *money*, leaving the ADA to govern the lawfulness of receipts of *services*. But there are exceptions. *See* GAO Redbook at 6-164–65; *see also, e.g.*, Memorandum for D. Lowell Jensen, Associate Attorney General, from Ralph W. Tarr, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Additional Questions Raised by Alan Hruska in Connection with His Employment as General Counsel to the President's Commission on Organized Crime* at 4 (Sept. 16, 1983) ("In order to avoid an unlawful augmentation, the Commission would have to pay for the fair value of the [office] space, [office] equipment, and [secretarial] services it receives."); Letter for Michael Castine, Acting Director for Private Sector Initiatives, The White House, from Robert B. Shanks, Deputy Assistant Attorney General, Office of Legal Counsel at 3 (Feb. 16, 1983) ("An agency that accepts voluntary *services or gifts* which it is not authorized to receive may violate the prohibition against unlawful 'augmentation' of its appropriations.") (emphasis added).

Assuming for purposes of argument that the anti-augmentation principle applies to services, we conclude that the Department's proposal here would not offend it. The anti-augmentation rule prohibits only *unauthorized* augmentations. As explained above, Congress has authorized the Department of Justice to employ the gratuitous services of special attorneys. *See* 28 U.S.C. § 515. Statutorily authorized gratuitous services present no anti-augmentation concerns. *See Authority of the Nuclear Regulatory Commission to Collect Annual Charges from Federal Agencies*, 15 Op. O.L.C. 74, 78 (1991) ("The anti-augmentation principle . . . is not applicable here because [a provision of the Omnibus Budget Reconciliation Act of 1990] provides express statutory authority for the NRC to recover 100% of its budget authority through user fees and annual charges from outside sources."); *Community Work Experience Program—State General Assistance Recipients at Federal Work Sites*, B-211079, B-211079.2, 1987 WL 101336, at *1 (Comp. Gen. Jan. 2, 1987) (concluding that an amendment to the Social Security Act "specifically authorized" federal agencies "to accept gratuitous services").

Although the acceptance of congressionally authorized uncompensated services does not violate the anti-augmentation principle, we have without elaboration protectively "caution[ed] . . . against the use of volunteers on a broad scale." *Federal Advisory Committees*, 6 Op. O.L.C. at 163. Here, the Criminal Division proposes the appointment of up to 30 lawyers—five percent of its attorney workforce—as special attorneys, and the Civil Rights Division proposes the appointment of an even smaller number of special attorneys. Thus, no broad-scale deployments of uncompensated volunteers are contemplated, and we need not consider whether our analysis would differ in the event that gratuitous services were solicited on a significantly more expansive scale.

## IV.

For the reasons set forth above, we conclude that OARM's proposal that the Department of Justice appoint a modest number of special attorneys to provide uncompensated services in two litigating divisions under 28 U.S.C. § 515 does not violate the ADA or the anti-augmentation principle, even though the attorneys would perform the same functions that compensated attorneys within those components perform. Acceptance of the uncompensated service is lawful because the attorneys will be appointed to positions for which Congress has specified no minimum salary. The Department should, however, enter a prior agreement with the appointed attorneys specifying that they will serve without pay.

VIRGINIA A. SEITZ
*Assistant Attorney General*
*Office of Legal Counsel*